Walter W. HAMM, Appellant,

v.

Art WALKER, d/b/a Art Walker Contracting Co., Appellee.

No. 50823.

Court of Appeals, of Oklahoma, Division 2.

April 17, 1979.

Released for Publication by Order of Court of Appeals May 10, 1979.

William J. Ervin, Baumert & Ervin, McAlester, Dean Hart, Jr., Hart, Rennie, McClain & Hart, Pauls Valley, for appellant.

Charles V. Foor, McAlester, for appellee.

BRIGHTMIRE, Judge.

Plaintiff, Walter Hamm, obtained a $30,000 judgment for unpaid compensation against his former employer. The trial court granted a new trial after "finding" that he erroneously forbade defense counsel from objecting to inadmissible answers and exhibits contained in a deposition read to the jury by the plaintiff. Plaintiff condemns this decision because it was, he says, an unmixed error of law.

I

On July 3, 1973, the defendant, Art Walker, handed plaintiff a company letterhead on which was typed this language:

"Agreement between ART WALKER CONTRACTING COMPANY & WALTER HAMM:

"ART WALKER CONTRACTING CO. agrees to pay you a guaranteed salary of $300.00 per week, plus 10% of the Net Profit of ART WALKER CONTRACTING CO. Labor, materials and all expenses will be charged against the Gross Profit EXCEPT: Purchase of equipment and depreciation on equipment in which the company will furnish.

"Mr. Hamm this will give you something to bind our agreement. When you come up we will draw up a legal Contract."

Hamm worked for defendant under this arrangement until December 31, 1975. During this time, the $300 weekly salary was paid, but the 10 percent was not. Hamm, in his petition as amended, said defendant owed him $31,850, and he asked for an accounting, a judgment for the amount due, attorney's fee, interest and costs.

Defendant answered admitting the employment agreement but alleging no profits were made between July 3, 1973 and December 31, 1975 and counterclaimed for $6,800 which defendant said plaintiff had borrowed and had never repaid.

This suit was filed February 6, 1976. The following November, plaintiff gave notice that he was going to take the deposition of a Mary Mitchell at the McAlester office of his attorneys on November 13. Defendant's attorney wrote a letter to plaintiff's attorneys dated November 10, 1976 acknowledging receipt of the deposition notice by advising that the date was not convenient and neither he nor his co-counsel would be present. The deposition was taken as scheduled. The witness, as it turned out, was a former employee of defendant who had worked from January, 1974 to May of 1975 as a "secretary and bookkeeper."

Later on, Mitchell identified a copy of a company letterhead containing a schedule of road paving projects handled by defendant during 1973 through early 1975 which was prepared by her and signed by Hamm and Walker. The witness also identified another sheet she had prepared which contained information similar to the first exhibit and in addition disclosed the net profit realized from each project. This exhibit (plaintiff's No. 2) indicated that during the time plaintiff worked for defendant, Walker realized a profit of $8,724.99 in 1973 and $216,814.60 in 1974. Mitchell said she had obtained this information from company records and that it was accurate. The deponent also identified other exhibits containing more detailed information concerning the costs and expenses charged to each project. Among other things, she testified that Walker had charged various personal expenses against certain jobs and also had sold his heavy equipment to a leasing company in Texas, had leased it back with an option to purchase, and then had deducted the "rental" payments to the leasing company as expenses chargeable against the gross profits of the surfacing projects.

## II

After defendant had gotten the case postponed several times, it finally came on for a jury trial February 3, 1977. In the course of putting on his evidence, plaintiff offered Mitchell's deposition. A discussion between the lawyers and the court took place at the bench. It developed that no objection to the deposition had been filed before trial as authorized by 12 O.S.1971 § 450, and so the only remaining question pertained to defendant's right to object to specific questions and answers. Defense counsel thought he could do this as each question was read. Plaintiff's counsel had a different opinion and thought that since defendant did not show up at the deposition and make his objections then or seek a stipulation to reserve objections until time of trial, objections to the competence or materiality of each question were waived. After noting that neither lawyer had "any law" on the subject, the court said, "I can't help but think the absence of an attorney would not make otherwise objectionable questions and answers admissible."

Defendant's counsel agreed and specifically objected to one of Mitchell's early answers given in response to the question: "Why did you leave the employment of Mr. Walker?" "I couldn't honestly work for a man who lied and cheated people," the witness answered—an answer assailed as being improper and slanderous. The trial court did not rule on this objection, and counsel neither pressed for a ruling nor renewed the objection at the time the question was read to the jury.

The only objections made during the actual reading of Mitchell's deposition were to the admission of plaintiff's exhibit No. 2[1] and of an enlargement of it. Both were overruled. Then, near the end of the deposition, plaintiff offered exhibits 1 through 13 into evidence, and defense counsel said, "The defendant has no objections."

In his order sustaining the motion for a new trial, the trial court stated that the case of *Hart v. Frost*, 73 Okl. 148, 175 P. 257 (1918) had been brought to his attention holding that where counsel failed to appear

---

1. Said counsel: "To which [offer] I object. It [exhibit 2] is a self-serving declaration. She stated that she prepared them herself, states for what purpose, what records she used."

at a deposition, he still had a fundamental right to make specific objections to individual questions either before the deposition is read or as they are being read to the jury. The judge then said this:

"The court finds that in the case at bar the court prevented defense counsel from objecting to each question as it was asked . . . by overruling the defense's request to do so, even though the transcript does not specifically show what objections were overruled, interposed by the defendant. The court specifically recalls the nature of the statements made in chambers off the record . . . and it is the court's finding that all parties understood that the defendant's objection that was overruled was his request to interpose objections question by question . . . ."

The court went on to find the unrecorded decision was an error which resulted in the improper admission of all the exhibits offered in the deposition and some unspecified prejudicial statements—results he found to be incapable of neutralization save by trying the case anew.

Contravening the trial court's "finding" of the "off the record" decision is an affidavit by one of plaintiff's counsel in which he swore "that at no time did any discussion take place in regard to the deposition in Chambers, and that all such discussions and rulings were made in open court; . . . [and] that this [affiant, contrary to what the court found] understood the objection of the Defendant to be exactly as set out in the Transcript . . . there were no in Chambers hearings in reference to the above objection presented by Mr. Foor . . . ."

### III

With all due respect to the trial judge, we find it difficult to reconcile contents of the transcript with the finding of a crucial off the record objection and ruling. The judge does not say when the "off the record" ruling was made. If it was before the commencement of the designated transcript we have (when the Mitchell deposition was offered), then it is hard to understand (1) why defense counsel made the pre-offer record he did, (2) why neither the lawyers nor the court referred to the "off the record" decision during the extended pre-offer debate, (3) why notwithstanding a dispositive chamber decision defense went right ahead and inquired about his right to object "otherwise to the admissibility" of answers given in the deposition, (4) why the court's only response to the inquiry was not that he had already ruled, but "I can't help, but think the absence of an attorney would not make otherwise objectionable questions and answers admissible," and (5) why defense counsel opined that that comment was "a proper ruling before the court" and proceeded to make an objection to one of the answers contained in the deposition.

Or if, on the other hand, the chamber decision was made between the time the deposition was offered and read, why does the transcript fail to show any recess or other interruption of continuity during which there could have been a "chamber discussion and ruling?

■■■ Without trying to reconcile the variant recollections of court and counsel we hold that, regardless of what "off the record" ruling was made, the record made sufficiently demonstrates the defendant had ample opportunity to, and indeed did, object to the one answer of Mitchell he found to be objectionable, and his failure to press for a ruling resulted in a waiver of the objection. *Tulsa Fruit Co. v. Lucas*, 208 Okl. 166, 254 P.2d 788 (1953).

■■■ And, with reference to the exhibits, we are of the opinion that the first exhibit was not "self serving." The witness was not a party to the lawsuit, and she testified that she prepared the exhibit from company data and its content was accurate. Defendant did not then and does not now challenge the accuracy or relevancy of the

data, nor does he explain how its admission prejudiced his rights. Moreover, whatever error the admission of the exhibit may have wrought, it was certainly cured, when, after reading the deposition, plaintiff offered all the exhibits into evidence, and defendant expressly stated he had "no objections" to them. Their admission, under the circumstances, could not have been a mistake.

It is apparent, therefore, that the trial court did not commit any reversible error with regard to Mitchell's deposition, and consequently, the ordering of a new trial was an unmixed error of law. *Lindsay v. Sikes*, Okl., 483 P.2d 1141 (1971).

The order granting a new trial is reversed, the judgment on the jury's verdict is reinstated, and the cause is remanded with directions to rule on plaintiff's application for an attorney's fee award and costs.

BACON, P. J., and NEPTUNE, J., concur.